# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF LOUISIANA
# SHREVEPORT DIVISION

| | |
|---|---|
| DANNY BAREFOOT | CIVIL ACTION NO. 15-240 |
| VERSUS | JUDGE ELIZABETH ERNY FOOTE |
| WEYERHAEUSER COMPANY | MAGISTRATE JUDGE HORNSBY |

## MEMORANDUM RULING

Before the Court is a Motion for Summary Judgment, filed by the Defendant, Weyerhaeuser Company ("Weyerhaeuser"). [Record Document 42]. The Plaintiff, Danny Barefoot ("Barefoot"), opposes the motion. [Record Document 51]. For the reasons that follow, Weyerhaeuser's motion shall be **GRANTED**.

## FACTUAL AND PROCEDURAL HISTORY

Weyerhaeuser operates a facility in Natchitoches, Louisiana where it manufacturers and packages engineered lumber products. Barefoot, a truck driver, picked up a load of joists from Weyerhaeuser with the intent to transport them to Louisville, Kentucky. During that trip, Barefoot attempted to exit I-220 onto the North Market Street/ Louisiana Highway 1 exit in Shreveport, Louisiana. While driving down the curved exit ramp, his 18-wheeler rolled over.

Initially, Barefoot alleged that Weyerhaeuser employees improperly loaded joists onto his truck, and this improper loading caused the lumber to shift in transport, resulting in the truck rolling over. Since the close of discovery, Barefoot has evidently altered his

Page 1 of 9

theory. He now concedes that Weyerhaeuser did not improperly load the truck, but instead submits that Weyerhaeuser is at fault for the "manner in which the load was packaged that led to a shift in the load once it was loaded." Record Document 51, p. 2. That is, relying on his expert witness, Barefoot contends that "the only possible cause for the incident would lie in the fault of the defendant in that the packaging bands broke in the cargo, causing the load to shift in Mr. Barefoot's trailer and Mr. Barefoot's trailer to roll over." Id. Thus, Barefoot avers the dispute of fact here is whether the Weyerhaeuser binding straps broke and caused a shift in the load. Unfortunately for Barefoot, he cannot survive summary judgment, as all he has submitted to the Court is speculation and conjecture.

## **LAW AND ANALYSIS**

Federal Rule of Civil Procedure 56(a) directs that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[1] Summary judgment is appropriate when the pleadings, answers to interrogatories, admissions, depositions and affidavits on file indicate that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. See Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548 (1986). When the burden at trial will rest on the non-moving party, the moving party need not produce evidence to negate the elements of the non-moving party's

---

[1] Rule 56 was amended effective December 1, 2010. Per the comments, the 2010 amendment was intended "to improve the procedures for presenting and deciding summary judgment motions and to make the procedures more consistent with those already used in many courts. The standard for granting summary judgment remains unchanged." Therefore, the case law applicable to Rule 56 prior to its amendment remains authoritative, and this Court will rely on it accordingly.

case; rather, it need only point out the absence of supporting evidence. See id. at 322-323.

Once the movant carries its initial burden, it is incumbent upon the non-moving party to demonstrate the existence of a genuine dispute as to a material fact. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 106 S. Ct. 1348 (1986); Wallace v. Texas Tech. Univ., 80 F.3d 1042, 1047 (5th Cir. 1996)(citations omitted). If the motion is properly made, however, Rule 56(c) requires the nonmovant to go "beyond the pleadings and designate specific facts in the record showing that there is a genuine issue for trial." Wallace, 80 F.3d at 1047 (citations omitted). This burden is not satisfied with some metaphysical doubt as to the material facts, by conclusory or unsubstantiated allegations, or by a mere scintilla of evidence. See Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994)(citations omitted). However, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S. Ct. 2505 (1985)(citations omitted); Reid v. State Farm Mut. Auto Ins. Co., 784 F.2d 577, 578 (5th Cir. 1986)(the court must "review the facts drawing all inferences most favorable to the party opposing the motion").

Additionally, Local Rule 56.1 requires the moving party to file a statement of material facts as to which it contends there is no genuine issue to be tried. Pursuant to Local Rule 56.2, the party opposing the motion for summary judgment must set forth a "short and concise statement of the material facts as to which there exists a genuine issue to be tried." All material facts set forth in the statement required to be served by the

moving party "will be deemed admitted, for purposes of the motion, unless controverted as required by this rule." Local Rule 56.2.

Here, Plaintiff retained accident reconstruction expert, A.J. McPhate ("McPhate"), who opined that the most probable cause of the rollover was that the individual banding around the packages of joists broke. To reach this opinion, McPhate considered Google Earth aerial photographs of the accident site to determine, among other things, the radius of the turn; depositions from Weyerhaeuser employees regarding the loading of the truck; and the accident report executed by the police officer at the scene of the accident. The accident report included a statement from a motorist, Chad Sewell ("Sewell"), who was driving down the exit ramp behind Barefoot's truck. Sewell's handwritten statement represented that Barefoot's "load of lumber shifted. He was not speeding. As it shifted it began to roll landing on its roof . . . ." Record Document 54-2.

Assuming the truthfulness and accuracy of Sewell's statement that Barefoot was not speeding, McPhate attempted to eliminate possible causes of the rollover. In conducting his analysis, McPhate readily admitted that he did not actually go to the scene of the accident, Record Document 42-8, p. 18, he did not measure the skid marks, id. at 22, he did not visit Weyerhaeuser's facility where the truck was loaded, id. at 18, he did not physically inspect the truck or the trailer, id., nor did he review photographs of the truck or the accident scene, id.

McPhate further admitted he did not calculate the center of gravity, which is often necessary in making a rollover determination. Id. at 19. He did not know the exact

dimensions of the truck once it was loaded, though he knew approximates. Id. McPhate acknowledged that in order to accurately calculate rollover threshold, he would need to know the dimensions of the truck and the trailer, the location of center of gravity, the weight of all components that were on the trailer, the parameters of the suspension of the truck and the trailer, and what kind of wheels were in use on the tractor-trailer. Id. When asked if calculating the rollover threshold in a rollover case would be important to determine what actually caused the accident, McPhate said "[i]t would certainly shed some light." Id. McPhate testified that he approximated the rollover threshold because "I didn't have a lot of the numbers for one thing, mostly the suspension of the truck." He discounted the significance of the exact rollover threshold because, in his view, 2/10th of a G was not "an extremely high load . . . and so I felt that the center of gravity wasn't at the top of the pile . . . . I could get a reasonable approximation to the rollover threshold without too much effort." Id. at 21.

McPhate's opinion is based largely upon a hearsay statement from Sewell that Barefoot was not speeding.[2] McPhate opined that "if given that we accept that the witness' statement that [Barefoot] was going less than 25 miles per hour or less, the load shifted, yes. The bands had to break. That's the only thing that could cause a geometric problem."

---

[2] While McPhate could rely on Sewell's statement if Sewell actually testified at trial, it is this Court's understanding that Sewell's statement may be inadmissible hearsay because Sewell has not been contacted about his statement in this case, nor has he been deposed. Therefore, McPhate's entire opinion is founded upon inadmissible hearsay if Sewell were not called to testify at trial. However, even if Sewell were to testify at trial, that would not save McPhate's inadequate testimony, as discussed further below.

Id. at 32. Nonetheless, McPhate agreed that the truck's speed could not be ruled out as a cause of the rollover, stating "I don't have any physical data that I can rely upon that rules that out." Id. at 23. In fact, he testified that he did not have enough data to say exactly what caused the rollover. "I am not going to go out on that limb, because I would have needed to see the remains of the tractor and the trailer. How it was, whether there were broken straps . . . ." Id. at 28. At his deposition, McPhate testified that:

> A: I have no physical evidence that . . . the load shifted. I only have the anecdote testimony of the witness. He says he was coming down, he wasn't speeding, and the load shifted.
> Q: Okay, so your entire opinion that the load shifted is based on the assumption that the eyewitness and the highway report was correct.
> A: That is correct. Absolutely.
> . . .
> Q: And are you relying on anything other than the eyewitness' statement for the report you issued in this case?
> A: That's correct. The eyewitness' statement.
> Q: That's all you are relying on?
> A: That's the only thing I have.

Id. at 28.

McPhate conceded that he could not rule out other possible causes for the rollover.

> [T]he fact of it is, we did not for all practical purposes, I don't know if any of the bands broke. I mean, I don't have -- I didn't make an inspection of the load after the crash, I don't know. And so there's more than one band around the package anyway. There are multiple bands and so I don't know. But what I would expect to happen if you broke one under a certain set of loading then it would zipper. And you would break the others, because they would then be immediately loaded up. But, no, I don't have any physical evidence.

Id. at 33.

Barefoot argues that McPhate considered and rejected alternative scenarios for why

the truck rolled over because those theories were inconsistent with the evidence in this case. The Court's review of the evidence in this case leads to the conclusion that there is no evidence whatsoever that any band actually broke. McPhate admits as much in his deposition. The Plaintiff's case be summed up thusly-- the bands holding the joists together must have broken, consequently causing a shift in the load and resulting in the rollover, but there is absolutely no evidence, physical or otherwise, that any band actually ever broke or that any broken bands were discovered after the accident.

Further bolstering the Court's conclusion that the broken band theory is speculative is that McPhate himself conceded that if Sewell's report was inaccurate, speeding may well be the cause of the rollover. And McPhate agreed that inattention, among other things, could have caused the accident. Hence, while McPhate's opinion suggests a possible cause for the rollover, it does not, contrary to Barefoot's representations, conclude that the internal bands did indeed break and did, in fact, cause the rollover. Rather, he freely admits that no broken bands were discovered and that he cannot conclusively identify the cause of the rollover.

In certain circumstances, the Fifth Circuit allows expert witnesses to employ a "differential diagnosis approach," which is a scientific technique that uses the process of elimination. See Sims v. Kia Motors of Am., Inc., 839 F.3d 393, 401 (5th Cir. 2016). To successfully use this approach, an expert witness must not only rule out alternative sources for the accident or injury, but must also rule in the cause cited by the Plaintiff. See id. In Sims, the Fifth Circuit noted that courts have "explicitly cautioned that merely 'ruling out'

other possible explanations is not enough . . . ." Id. at 401-02. Applying Sims to the instant case shows how McPhate's testimony fails to satisfy Barefoot's burden in two respects. First, while McPhate embraces the broken band theory, he concedes that he cannot rule out other possible causes for the load shifting. Second, even assuming arguendo that McPhate could rule out other possible causes for the load shifting, he readily admits that he has no facts upon which to "rule in" the broken bands as the cause of the shifting load.

This Court resolves "factual controversies in favor of the nonmoving party, but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts. [The Court does] not, however, in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." Little, 37 F.3d at 1075. In this case, the evidence does not reveal with any degree of certainty why the truck rolled over. The record is clear on only one point: the truck did roll over. Beyond that, the facts in the record lead only to speculation as to the cause of the rollover. A breakage in the bands is one speculative theory. In the absence of actual evidence, however, this speculative theory remains just that- speculation. In order to sustain his burden of proof, it was incumbent upon Barefoot to present evidence that the bands did actually break and that that breakage caused the rollover. This, he has failed to do. McPhate's opinion is too speculative in nature to create a genuine dispute of fact. As the Fifth Circuit has oft instructed, when "a party cannot produce proof that it has facts to support its case, then the case should be resolved at that point." Little, 37 F.3d at 1076.

## CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that Weyerhaeuser's motion for summary judgment [Record Document 42] be and is hereby **GRANTED**. Plaintiff's claims against Weyerhaeuser be and are hereby **DISMISSED WITH PREJUDICE**.

A judgment consistent with the terms of this Memorandum Ruling shall issue herewith.

**THUS DONE AND SIGNED** this 11th day of April, 2017 in Shreveport, Louisiana.

ELIZABETH E. FOOTE
UNITED STATES DISTRICT JUDGE